UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                              :

In re ARCAPITA BANK B.S.C.(c), *et al.*,

                 Reorganized Debtors.

                                              :
- - - - - - - - - - - - - - - - - - - - - - - -X
                                              :

CAPTAIN HANI ALSOHAIBI,

                                              :

                   Appellant,

                                              :

               -against-

                                              :

ARCAPITA BANK B.S.C.(c), *et al.*,

                                              :

                 Reorganized Debtors-
                 Appellees.        :
- - - - - - - - - - - - - - - - - - - - - - - -X

14 Civ. 43 (WHP)

Appeal arising from
Bankruptcy Case No. 12-11076 (SHL)

<u>MEMORANDUM & ORDER</u>

WILLIAM H. PAULEY III, District Judge:

        Captain Hani Alsohaibi appeals from an order of Bankruptcy Judge Sean H. Lane

entered on November 21, 2013 sustaining the objection of Arcapita Bank B.S.C.(c) to

Alsohaibi's claim.  See <u>In re Arcapita Bank</u>, No. 12-11076 (SHL), 2013 WL 6141616 (Bankr.

S.D.N.Y. 2013).  For the following reasons, the bankruptcy court's order is affirmed.

BACKGROUND

I.    <u>Facts</u>

        Arcapita Bank was a Bahrain bank which specialized in facilitating investments

under Sharia law.  Typically, Arcapita structured its transactions by establishing a Cayman

Islands company (a "Holding Company") that acquired an equity interest in an unaffiliated target

company.  Arcapita then created another Cayman Islands company (a "Syndication Company")

to which it transferred a portion of the equity of the Holding Company.  Private investors could

purchase an interest in the Syndication Company, thereby indirectly acquiring an interest in the target company.

Alsohaibi made several investments through Arcapita in 2005 and 2006. He invested $1 million in Fuselage Capital Ltd., the Syndication Company associated with target company Cirrus Industries, Inc. He later invested an additional $300,000 in Fuselage. In May 2011, Alsohaibi received $260,000 for his Fuselage stock as his share of compensation from a merger. Alsohaibi invested $100,000 in each of four Syndication Companies associated with Bahrain Bay Developments B.S.C.(c).[1] After returns of capital in 2007 and 2008 of $125,719 and $114,061.42, respectively, he has a current net investment of $160,219.58 in Bahrain Bay Syndication Companies. Alsohaibi also invested $213,120.83 in each of two Syndication Companies associated with Riffa Golf and Residential Development Co. B.S.C.(c).[2] After a return of capital in 2008 of $98,459.04, he has a current net investment in Riffa Golf of $327,782.62. In addition to his investments, Alsohaibi has a deposit account at Arcapita.

II.    Procedural History

On March 19, 2012, Arcapita and certain of its subsidiaries (together, the "Reorganized Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. None of the Syndication Companies Alsohaibi invested in or the target companies they are affiliated with are among the Reorganized Debtors—that is, none of the companies Alsohaibi invested in have gone bankrupt, only Arcapita, the bank that facilitated them. He still has his investments.

---

[1] The Syndication Companies are WaterBay Capital Ltd., WaterFront Capital Ltd., WaterWay Capital Ltd., and WaterSide Capital Ltd.
[2] The Syndication Companies are Delmon Lifestyle Capital Fund and Awal Lifestyle Capital Ltd. Riffa Golf appears to also go by, or have changed its name to, Riffa Views B.S.C.(c).

On August 25, 2012, Alsohaibi, acting pro se, sent a letter to Bankruptcy Judge Sean H. Lane requesting the bankruptcy be dismissed and accusing Arcapita of operating illegally in Saudi Arabia. (Bankr. Dkt. No. 525.) The bankruptcy court denied that motion in December 2012 and it is not at issue on this appeal. (Bankr. Dkt. No. 745.)

On August 29, 2012, Alsohaibi, still acting pro se, filed a proof of claim against Arcapita in the amount of $1,039.032.33. (Claim #280.) He now argues the proof of claim was made "in the aggregate amount" of $1,527,139.35 because paperwork submitted along with the proof of claim form added up to the latter amount, not the lesser amount noted on the form. This discrepancy does not affect the issues in this appeal. Alsohaibi's proof of claim characterized his claim as one based on "Corporate Investment." He attached a portfolio statement showing his investment balances and a $104.84 balance in his deposit account.

On April 26, 2013, the Reorganized Debtors filed their Second Omnibus Objection to Claims, which objected to Alsohaibi's claim because (a) it was for an amount greater than the amounts reflected on Arcapita's books and records and (b) it appeared to be based on Alsohaibi's equity interests in non-debtor entities. (Bankr. Dkt. No. 1050.) Documents attached to the objection showed Alsohaibi's bank account actually had a balance of $148.91 on the day the Reorganized Debtors filed for bankruptcy, not $104.84 as Alsohaibi stated in his proof of claim. Because Arcapita denied liability for Alsohaibi's investments, it argued his claim should be reduced to $148.91.

Thereafter, Alsohaibi retained an attorney who responded to the Reorganized Debtors' objection. (Bankr. Dkt. No. 1417.) On November 21, 2013, Bankruptcy Judge Lane granted the Debtors' objection to Alsohaibi's claim, reducing it to $148.91. Alsohaibi filed this appeal.

<u>DISCUSSION</u>

I.   <u>Standard of Review</u>

On appeal, a bankruptcy court's findings of fact are reviewed for clear error while its conclusions of law are reviewed de novo. Fed. Bankr. R. 8013; <u>In re Motors Liquidation</u>, No. 12 Civ. 6785 (WHP), 2013 WL 110545, at *1 (S.D.N.Y. Jan. 7, 2013) (citing <u>In re Vouzianas</u>, 259 F.3d 103, 107 (2d Cir. 2001)).

II.   <u>Whether Adequate Evidence Supported Disallowance of the Proof of Claim</u>

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim . . . against the debtor's estate." <u>Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.</u>, 549 U.S. 443, 449 (2007). A properly filed proof of claim is "prima facie evidence of the validity and amount of the claim." Fed. Bankr. R. 3001(f). A party in interest may object to a claim and show that it should not be allowed because it falls within one of the nine exceptions listed in 11 U.S.C. § 502(b). The objecting party bears the initial burden of production and must provide evidence showing the claim is legally insufficient. <u>In re Oneida, Ltd.</u>, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). The burden then shifts to the claimant, who must "prove by a preponderance of the evidence that under applicable law the claim should be allowed." <u>In re Oneida</u>, 400 B.R. at 389.

"[A] 'claim' is a 'right to payment' or 'equitable remedy.'" <u>Hasson v. Motors Liquidation Co. GUC Trust (In re Motors Liquidation Co.)</u>, 2012 WL 1886755, at *4 (S.D.N.Y. May 21, 2012) (quoting 11 U.S.C. § 101(5)(A)(B)). By contrast, an "equity security" is "<u>inter alia</u>, a 'share in a corporation . . . or similar security.'" <u>Hasson</u>, 2012 WL 1886755, at *4 (quoting 11 U.S.C. § 101(16)(A)). "Those who have 'claims' against the debtors are called 'creditors,' while those who hold 'equity securities' are called 'equity security holders.'"

-4-

Hasson, 2012 WL 1886755, at *4 (citing 11 U.S.C. §§ 101(10), 101(17)).  "In other words,

'[s]imply put, an equity interest is not a claim against the debtor for which the equity holder may

assert a right to payment' by filing a proof of claim."  Hasson, 2012 WL 1886755, at *4 (citing

In re Pine Lake Vill. Apartment Co., 21 B.R. 478, 480 (Bankr. S.D.N.Y. 1982) (explaining that

an equity security holder may file only a "proof of interest")); see also McGimsey Trust v. USA

Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortg. Co. USA Capital

Realty Advisors, LLC), 377 B.R. 608, 615 (B.A.P. 9th Cir. 2007) ("It is axiomatic that an

allowed proof of claim requires something more than mere equity ownership.").  "When a

corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one

pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that

kind should be viewed with suspicion."  Jezarian v. Raichle (In re Stirling Homex Corp.), 579

F.2d 206, 213 (2d Cir. 1978) (quoting Newton Nat'l Bank v. Newbegin, 74 F. 135, 140 (8th Cir.

1896)).

   The Reorganized Debtors submitted two declarations in support of their objection

to Alsohaibi's claim.  The first, from Steven Kotarba, a managing director at Alvarez & Marshal,

the restructuring advisor for the Reorganized Debtors, stated that Alsohaibi's claim did not

conform to Arcapita's books and records.  (Bankr. Dkt. No. 1351.)  Kotarba averred that

Alsohaibi's "investment account claims" sought "recovery of funds previously exchanged by the

claimant for equity interests in Debtors or non-Debtors, necessitating a reduction or even

disallowance of the asserted claims."  (Bankr. Dkt. No. 1351 at 6.)  The Reorganized Debtors

also submitted a declaration from Amin Ebrahim Jawad, an associate in the investor information

management group at Arcapita.  (Bankr. Dkt. No. 1351.)  The Jawad Declaration attached the

share purchase agreements reflecting Alsohaibi's equity investments in Cirris Industries, Bahrain

Bay Devlopment, and Riffa Golf; an account statement for Alsohaibi's deposit account; and a portfolio statement showing his equity investments as of June 30, 2013. (Bankr. Dkt. No. 1351.)

Alsohaibi asserts that the Kotarba and Jawad declarations are "self-serving" and "based on hearsay" without elaborating on these arguments. The declarations are sufficient to authenticate the records attached to them. Alsohaibi also argues Arcapita violated Federal Rule of Appellate Procedure 10(a) by submitting certain evidence as part of the appellate record that was filed as part of the underlying bankruptcy but not in connection with the adjudication of Arcapita's objection to his claim. Alsohaibi does not identify the specific evidence he objects to, referring only to "Statements and Schedules." These appear to be the schedules Arcapita referenced in its objection to Alsohaibi's claim, so Alsohaibi is incorrect that they were not submitted in connection with the claim. But regardless, it is Bankruptcy Rule 8006 which controls, not Federal Rule of Appellate Procedure 10(a). Under that rule, a party may draw from documents submitted in the underlying bankruptcy when creating the record for an appeal of a contested matter. In re Indian Palms Assocs. Ltd., 61 F.3d 197, 204 (3d Cir. 1995).

Importantly, Alsohaibi does not dispute that his proof of claim, with the exception of his deposit account, is based on equity investments. The proof of claim itself listed "Corporate Investment" as its basis and attached papers consistent with that assertion. The bankruptcy court correctly found it is "clear" that except for the $148.91 in his bank account, Alsohaibi's claim "is based not on an obligation of the Debtors but rather on [Alsohaibi's] equity in these three non-Debtor entities." In re Arcapita, 2013 WL 6141616 at *3. Alsohaibi submits evidence showing his investments have not been profitable and are unlikely to become profitable. But this does not provide the basis for a claim against Arcapita. Investments are inherently risky.

Alsohaibi contends the bankruptcy court erred in granting Arcapita's objection without applying the foreign law he argues governs his relationship with Arcapita. He states that the agreement opening his investment account at Arcapita provides that it is governed by the laws of Bahrain to the extent they are not inconsistent with Sharia law. Alsohaibi never submitted this purported agreement to the bankruptcy court, but merely put forth what he says is the relevant language in his response to Alcapita's objection. His purchase agreements for the Bahrain Bay and Riffa Golf investments state they are governed by the laws of the Cayman Islands.[3] In light of these choice of law provisions, Alsohaibi argues the bankruptcy court erred in applying U.S. bankruptcy law.

But in addition to not specifying which nation's law should apply in the face of conflicting choice of law provisions, Alsohaibi does not explain how he is entitled to recover against Arcapita under either Bahrain or Cayman Islands law. He does not claim that Arcapita breached the contracts containing the choice of law provisions. The fact section of his brief makes a conclusory assertion that Arcapita unlawfully solicited him in Saudi Arabia, where it was allegedly not entitled to do business. But this is not raised in his proof of claim and Alsohaibi has not presented any evidence as to this allegation or shown why, if true, it provides him with a private right of action against Arcapita under some foreign law. In fact, in responding to Arcapita's objection, Alsohaibi has steadfastly avoided articulating what the theory of his claim is if it is not merely his equity ownership in non-debtor companies. At oral argument, Alsohaibi's counsel offered either "unlawful solicitation" under Saudi law, an argument which was not raised in Alsohaibi's proof of claim or explained in his papers, or alternatively, "as a matter of the Bahrain law there is liability." Mar. 7, 2014 Tr. 6:12-17 (ECF

---

[3] These agreements were attached as Exhibits 5 and 6 to the Jawad declaration.

No. 10). This vagueness is insufficient to show a claim against Arcapita. Therefore even if Bahrain or Cayman Islands law governs Alsohaibi's contracts, he has not shown what claim he has against Arcapita under foreign law.

> The bankruptcy court correctly found that Arcapita's evidence refuted the prima facie validity of the claim by showing that Alsohaibi's claims were based on equity investments in non-debtor entities. Alsohaibi did not prove by a preponderance of the evidence that his claim should be allowed. The bankruptcy court therefore properly granted Arcapita's objection.

III.   Rule 44.1

> Alsohaibi argues Arcapita violated Federal Rule of Civil Procedure 44.1 and Bankruptcy Rule 9017, which require a party to give notice if it intends to rely on foreign law. Alsohaibi's argument is baffling, as Arcapita did not rely on foreign law—it is Alsohaibi who intended to rely on foreign law (though what foreign law is unclear). Because Arcapita did not raise an issue of foreign law, it did not violate Rule 44.1 or Bankruptcy Rule 9017.

IV.   Choice of Forum

> Alsohaibi objects to proceedings in the Southern District of New York because his agreements with Arcapita provide for exclusive jurisdiction in the courts of Bahrain (in one contract[4]) or the Cayman Islands (in two others). However, "[a] debtor-in-possession . . . is not bound by a forum selection clause in an agreement provided the litigation at issue amounts to a core proceeding and is not inextricably intertwined with non-core matters." Statutory Comm. of Unsecured Creditors v. Motorola, Inc. (In re Iridium Operating LLC), 285 B.R. 822, 837 (S.D.N.Y. 2002) (quoting Official Comm. of Unsecured Creditors v. Transpacific Corp. (In re

---

[4] Again, Alsohaibi merely informed the bankruptcy court this contract provides for exclusive jurisdiction in Bahrain without actually producing the contract.

Commodore Int'l, Ltd.), 242 B.R. 243, 261 (Bankr. S.D.N.Y. 1999)).  A claim objection is a core proceeding, 28 U.S.C. § 157(b)(2)(B), and this objection is not "inextricably intertwined" with other litigation.  Therefore, the bankruptcy court is the appropriate forum.

V.   Cirrus Purchase Agreement

The fact section of Alsohaibi's brief claims that one of his Cirrus purchase agreements was "forged" because the signature block states it was executed in Lebanon, when in fact it was executed in Saudi Arabia.  The bankruptcy court noted, as is true of much of Alsohaibi's contentions, that "the precise legal argument is vague on this point."  In re Arcapita Bank, 2013 WL 6141616 at *6.  On appeal, Alsohaibi presents no legal argument relating to this assertion and appears to have abandoned any argument premised on it.  Nonetheless, the bankruptcy court correctly found that Alsohaibi "has not explained why or how the potential evidentiary issue he raises would in any way impact the fact that his Claim is based upon an equity investment in a non-Debtor entity.  Indeed, it would seem that the location in which Claimant signed the agreement would have no impact on the facts relevant for resolving this Objection."  In re Arcapita Bank, 2013 WL 6141616 at *6.

CONCLUSION

For the foregoing reasons, Bankruptcy Judge Sean H. Lane's well-reasoned memorandum of decision and order is affirmed.  The Clerk of Court is directed to terminate all pending motions and mark this case closed.

Dated: April 29, 2014
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

Copy to:

Bankruptcy Judge Sean H. Lane

Tally M. Wiener, Esq.
Togut, Segal & Segal LLP
One Penn Plaza
New York, NY  10119
Counsel for Appellant

Evan R. Fleck, Esq.
Milbank, Tweed, Hadley & McCloy LLP
1 Chase Manhattan Plaza
New York, NY  10005
Counsel for Appellees